John William SMITH, Appellant

v.

COMMONWEALTH of Kentucky, Appellee

NO. 2013–CA–001288–MR

Court of Appeals of Kentucky.

RENDERED: JANUARY 8, 2016; 10:00 A.M.

Brief for Appellant: Emily Holt Rhorer, Assistant Public Advocate, Frankfort, Kentucky.

Brief for Appellee: Jack Conway, Attorney General of Kentucky, Leilani K.M. Martin, Assistant Attorney General, Frankfort, Kentucky.

BEFORE: ACREE, CHIEF JUDGE; KRAMER AND THOMPSON, JUDGES.

*OPINION*

KRAMER, JUDGE:

John William Smith appeals the Monroe Circuit Court's judgment convicting him of manufacturing methamphetamine and first-degree possession of a controlled substance. After a careful review of the record, we reverse in part because the circuit court abused its discretion in denying Smith's motion for a continuance, we affirm in part regarding Smith's remaining claims, and we remand for a new trial.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In January 2012, Tompkinsville City Police Department Chief Dale Ford was on duty when an anonymous telephone call was received by the department stating that two males were in the process of making methamphetamine in a black pickup truck; that one of the males was Timmy Curtis; and that the truck was parked at the house where Curtis resided. The caller also provided the address for the house where the men and the truck could be found. Officers went to that location and found Curtis and John Smith in the truck near the basement door. As one officer was approaching the scene, Curtis exited the truck and ran into the house, dropping a bottle in the yard as he did so. Curtis ran through the house and exited

the other side, essentially running into the police chief.

Smith was sitting in the driver's seat of the truck, and he was ordered to exit the vehicle and lie on the ground. The driver's side door of the truck was left open and inside the truck, the officers could see an open duffel bag containing components of methamphetamine manufacturing. The bag was located in the middle of the bench-style seat of the truck, which was the only seat in the truck.

Because the officers present were not certified to take apart a methamphetamine lab, dispatch was called so that properly trained officers could come and dismantle the methamphetamine lab. Officers Jesse England and Kerry Denton of the Tompkinsville Police Department were the certified officers who arrived to dismantle the methamphetamine lab. Samples were taken and tested, and the results revealed the presence of pseudoephedrine/ephedrine and methamphetamine.

Smith was indicted on charges of: Manufacturing methamphetamine; possession of drug paraphernalia; and first-degree possession of a controlled substance. Smith moved to suppress the evidence against him, and a suppression hearing was held. The court orally denied Smith's motion to suppress at the close of the suppression hearing.

During the suppression hearing, Smith orally moved for a continuance of his trial. The court denied his motion. Following the hearing, Smith filed a written motion for a continuance. In that motion, he argued that he had learned during the suppression hearing that the two officers from the Tompkinsville Police Department who were the "technicians" who worked the case and handled the alleged "methamphetamine lab" materials in the case, Kerry Denton and Jessie England, would be unavailable to testify during the scheduled trial because they were both deployed with the military overseas. Smith alleged that these two witnesses were indispensable because they could establish that no "active" methamphetamine lab was present, which he believed would assist with his defense. On the day trial was scheduled to begin, the court orally denied Smith's motion for a continuance, then proceeded with the trial.

A directed verdict was granted regarding the possession of drug paraphernalia charge. Consequently, that charge was dismissed. The jury ultimately convicted Smith on the charges of manufacturing methamphetamine and first-degree possession of a controlled substance. The jury recommended a sentence of fifteen years of imprisonment for the manufacturing methamphetamine conviction and three years of imprisonment for the first-degree possession of a controlled substance conviction. The jury further recommended that the sentences be served consecutively. However, upon final sentencing, the court ordered the sentences recommended by the jury to be served concurrently, for a total of fifteen years of imprisonment.

Smith now appeals, contending that: (a) the circuit court denied him due process when it denied his motion for a continuance due to the absence of the two witnesses; (b) testimony about the anonymous tip received by police was inadmissible hearsay, and error in admitting it was not harmless; (c) he was denied due process of law by the manufacturing methamphetamine jury instruction that failed to require proof of the requisite mental state; and (d) a directed verdict should have been granted on both counts submitted to the jury, due to the lack of evidence that Smith possessed any of the items in this case.

## II. ANALYSIS

### A. MOTION FOR CONTINUANCE

 Smith first alleges that the circuit court denied him due process when it denied his motion for a continuance due to the absence of the two officer witnesses, who he claims were critical to his defense. Smith asserts that the witnesses' testimony that there was no "active" methamphetamine lab would have helped his defense. He contends that their testimony would help prove elements of his defense, specifically, that the duffel bag in the truck belonged to his co-defendant, Timmy Curtis, and that Smith did not know what was in the bag. Smith alleges that if the methamphetamine lab was "active," the jury would be more likely to believe that Smith knew what was going on in the vehicle.

 We review a circuit court's order denying a motion for a continuance for an abuse of discretion. *See Guffey v. Guffey,* 323 S.W.3d 369, 371 (Ky.App.2010). A court has broad discretion in controlling the disposition of the cases on its docket and in determining whether to grant a continuance. *See Rehm v. Clayton,* 132 S.W.3d 864, 869 (Ky.2004). This, however, involves a "weigh[ing of] competing interests and maintain[ing] an even balance." (internal citation omitted). *Id.* A court should consider several factors when deciding whether to grant a continuance:

1) The length of delay;

2) Whether there have been any previous continuances;

3) The inconvenience to the litigants, witnesses, counsel, and the court;

4) Whether the delay is purposeful or caused by the accused;

5) The availability of competent counsel, if at issue;

6) The complexity of the case; and

7) Whether denying the continuance would lead to any identifiable prejudice.

*Anderson v. Commonwealth,* 63 S.W.3d 135, 138 (Ky.2001) (internal quotation marks and citation omitted).

Regarding the length of the delay, in his motion for a continuance, Smith noted that trial was scheduled for March 2013, and that the Commonwealth had asserted that it believed the two witnesses would be available for trial in November. This would have been an eight-month delay of the trial date, which is not unreasonable. This factor weighs in favor of Smith.

There were no prior continuances. Thus, this factor weighs in favor of Smith.

As for inconvenience, the Kentucky Supreme Court has held that "any change in trial date is going to cause some inconvenience. Thus, in order to become a factor for consideration there must be some significant or substantial inconvenience, which should be demonstrated on the record." *Eldred v. Commonwealth,* 906 S.W.2d 694, 700 (Ky.1994), *abrogated on other grounds by Commonwealth v. Barroso,* 122 S.W.3d 554 (Ky.2003). In the present case, the Commonwealth did not demonstrate on the record any substantial inconvenience. Although the Commonwealth argues in its brief that there was inconvenience due to the fact that there had been a "significant delay in the trial schedule in that circuit" because the original circuit judge assigned to the case passed away while it was pending, the Commonwealth did not show how a continuance of the trial would have caused a significant inconvenience. The Commonwealth also argues in its brief that Smith's "proposed delay in this case could have further posed especial inconvenience to a different Co–Defendant, witnesses and victims in a second case—for which he was arrested while out on bond for this case—who were all relying upon a disposition in [Smith's] case at bar." However, the

Commonwealth does not explain why those people were relying on a disposition in this case before proceeding with the other case against Smith, or why this would have caused a significant inconvenience. Therefore, this factor weighs in favor of Smith.

Further, Smith did not cause the delay, nor was it purposeful. Rather, the delay was requested merely because the two witnesses who investigated and dismantled the methamphetamine lab were out of the country with the military at the time that the trial was scheduled to take place. Therefore, this factor weighs in Smith's favor.

There is no issue about the availability of competent counsel. Thus, this factor is inapplicable in this case.

As for the complexity of the case, it is a moderately complex case, due to the fact that it involves the manufacture of methamphetamine. Thus, this factor weighs in Smith's favor.

Regarding whether denying the continuance would lead to any identifiable prejudice, Smith argues that his defense was that the duffel bag belonged to Timmy Curtis, and that he did not know what Timmy was doing. Smith also contends that the two officers who dismantled the methamphetamine lab were certified methamphetamine technicians and, accordingly, they could testify whether the lab was "active" or not for purposes of the manufacturing methamphetamine charge. The Commonwealth alleges that Smith called Timmy Curtis as a witness during trial, and Curtis testified that he called Smith for a ride to his house from a wooded area; that Smith drove him to his house; that Curtis had the duffel bag containing the methamphetamine ingredients with him when Smith picked him up; that once they arrived at Curtis's house, Curtis sat in the truck next to Smith while Curtis "smoked off" the methamphetamine as part of the manufacturing process; that both he and Smith knew the "ins and outs" of methamphetamine; and that Smith knew what Curtis was doing when he was smoking off the methamphetamine. Consequently, the Commonwealth argues that because Curtis was called by Smith as a witness, and Curtis testified that the duffel bag was his, that Smith knew what Curtis was doing when he was smoking off the methamphetamine, and that Curtis was manufacturing methamphetamine while in the truck (which appears to imply that the methamphetamine lab was "active" at that time), there was no identifiable prejudice by denying the motion for a continuance. The Commonwealth also asserts that the manufacturing methamphetamine expert it called at trial, Detective Scott Drummond, "testified that there was no way for him to determine whether the lab was active or not at the time of [Smith's] arrest from the evidence that he had reviewed." The Commonwealth further contends that Police Chief Ford and Monroe County Sheriff's Deputy Larry Martin, who were on the scene (and who were not certified to dismantle the methamphetamine lab) when Smith and Curtis were arrested testified that they were uncertain of what stage of production the methamphetamine lab was in at the time of the arrest. Because of this, whatever relevance that the active or inactive state of the lab had to the defense was ably provided through the Commonwealth's witnesses, and was not omitted but for the testimony of [Officers] Denton and England.

However, because at the time that the circuit court denied the motion for a continuance, it was unaware that Curtis would subsequently testify concerning the aforementioned matters, we cannot take his testimony into consideration in reviewing the denial of the motion for a continuance, as

hindsight is always 20/20. Further, because Detective Scott Drummond was not actually at the scene of the crime at the time that Curtis and Smith were arrested, his testimony that he could not tell from the evidence he reviewed whether the lab had been active or not was not as strong as the testimony from the two officers who dismantled the methamphetamine lab presumably would have been, because they were both eyewitnesses to the scene of the crime. Moreover, because Police Chief Ford and Deputy Martin were not certified as experts concerning methamphetamine labs and the stages of manufacturing methamphetamine, their testimony that they were uncertain what stage of manufacture the lab was in was not as strong as the testimony of the two officers who dismantled the lab would have been. Therefore, this factor weighs in favor of Smith.

Consequently, upon reviewing the factors the circuit court was required to analyze prior to denying Smith's motion for a continuance, we find that the circuit court abused its discretion in denying the motion. We therefore reverse and remand this case for a new trial. Although it is unnecessary for us to review Smith's remaining claims, we will nevertheless review them because if we conclude that the circuit court erred concerning the remaining claims, the court will then be able to correct the errors during the new trial.

## B. ANONYMOUS TIP

■ . Smith next asserts that testimony about the anonymous tip received by police was inadmissible hearsay, and error in admitting it was not harmless. Before Police Chief Ford was called as a witness, defense counsel objected to testimony about the anonymous tip that had been made by telephone call. Specifically, defense coun-

sel argued that the anonymous tip was hearsay and a violation of the Confrontation Clause because the tipster was not available for cross-examination.

■ Pursuant to CR [1] 61.01:

No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

"[W]e review a trial court's evidentiary rulings for an abuse of discretion." *Ordway v. Commonwealth,* 391 S.W.3d 762, 774 (Ky.2013). "[P]reserved evidentiary and other non-constitutional errors will be deemed harmless ... if we can say with fair assurance that the judgment was not substantially swayed by the error." *Ordway,* 391 S.W.3d at 774 (internal quotation marks and citation omitted). "As to those preserved constitutional errors which are subject to harmless error review, they must be shown to be 'harmless beyond a reasonable doubt' in order to be deemed harmless." *Ordway,* 391 S.W.3d at 774 (internal quotation marks and citation omitted).

■ "Extrajudicial statements to a police officer are inadmissible hearsay unless offered to explain the basis for the action later taken by the police officer." *Kerr v. Commonwealth,* 400 S.W.3d 250, 257 (Ky.2013).

1. Kentucky Rule of Civil Procedure.

The rule is that a police officer may testify about information furnished to him only where it tends to explain the action that was taken by the police officer as a result of this information *and* the taking of that action is an issue in the case. Such information is then admissible, not to prove the facts told to the police officer, but only to prove why the police officer then acted as he did. It is admissible *only if there* is an issue about the police officer's action.

*Kerr*, 400 S.W.3d at 257 (internal quotation marks and citation omitted).

In the present case, Police Chief Ford testified that he was on duty when an anonymous telephone call was received by the police department stating that two males were in the process of making methamphetamine in a black pickup truck; that one of the males was Timmy Curtis; and that the truck was parked at the house where Curtis resided. He also attested that the caller provided the address for the house where the men and the truck could be found.

 There is no allegation that there is an issue about the actions of the police chief and sheriff's deputies in going to Curtis's house. Thus, pursuant to *Kerr*, the circuit court erred in allowing in the hearsay testimony. However, the error was harmless because there was significant other evidence in the case showing that Curtis and Smith were in the truck when methamphetamine was being manufactured, and the judgment was not substantially swayed by the error of allowing in the hearsay testimony. Furthermore, Smith alleges his right to confront the witnesses against him was violated when the police chief testified about the anonymous tip, but the tipster was not subject to cross-examination at trial. Any error in not allowing Smith to cross-examine the tipster was harmless beyond a reasonable doubt, due to the strength and the weight of the other evidence against Smith, considering he was caught sitting in the driver's seat of the truck while methamphetamine was being manufactured in it.

## C. JURY INSTRUCTION

 Smith next contends that he was denied due process of law by the manufacturing methamphetamine jury instruction because it failed to require proof of the requisite mental state. Specifically, he states that "[a]t the close of the Commonwealth['s] and defense['s] cases, the court granted the Commonwealth's motion to amend the indictment to [charge Smith] with complicity. This was over defense objection." Smith states that the complicity definition provided in the jury instructions was as follows:

Complicity—Means that a person is guilty of an offense committed by another person when, with the intention of promoting or facilitating the commission of the offense, he solicits, commands, or engages in a conspiracy with such other person to commit the offense, or aids, counsels or attempts to aid such person in planning or committing the offense.

Smith alleges that the complicity instruction in this case failed to set forth the required mental state for him to be convicted of complicity. He contends that the jury verdict form did not permit the jury to specify if it was convicting him as a principal or as an accomplice. Smith acknowledges that this claim of a defectively phrased instruction is not preserved for our review, but he asks us to review it for palpable error.

 Regarding unpreserved claims of error in jury instructions, the Kentucky Supreme Court has held that

when the allegation of instructional error is that a particular instruction should

have been given but was not or that it should not have been given but was given, RCr [2] 9.54 operates as a bar to appellate review unless the issue was fairly and adequately presented to the trial court for its initial consideration. *Martin v. Commonwealth,* 409 S.W.3d 340, 346 (Ky.2013). However, when the unpreserved claim is that "the instruction given was incorrectly stated[,]" we may review it for palpable error under RCr 10.26. *Martin,* 409 S.W.3d at 346. "In summary, assignments of error in 'the giving or the failure to give' an instruction are subject to RCr 9.54(2)'s bar on appellate review, but unpreserved allegations of defects in the instructions that were given may be accorded palpable error review under RCr 10.26." *Martin,* 409 S.W.3d at 346. In the present case, because Smith complains that there was a defect in an instruction that was given, we will review it for palpable error.

■■■ Kentucky Rule of Criminal Procedure 10.26 provides as follows: "A palpable error which affects the substantial rights of a party may be considered ... by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error."

[T]he requirement of "manifest injustice" as used in RCr 10.26 ... mean[s] that the error must have prejudiced the substantial rights of the defendant, ... *i.e.,* a substantial possibility exists that the result of the trial would have been different....

[The Kentucky Supreme Court has] stated that upon consideration of the whole case, the reviewing court must conclude that a substantial possibility exists that the result would have been different in order to grant relief.

*Castle v. Commonwealth,* 44 S.W.3d 790, 793–94 (Ky.App.2000) (internal quotation marks and citation omitted).

Complicity is set forth as a crime in KRS 502.020. The Kentucky Supreme Court has explained that

KRS [3] 502.020 describes two separate and distinct theories under which a person can be found guilty by complicity, *i.e.,* "complicity to the act" under subsection (1) of the statute, which applies when the principal actor's conduct constitutes the criminal offense, and "complicity to the result" under subsection (2) of the statute, which applies when the result of the principal's conduct constitutes the criminal offense, [namely]:

(1) A person is guilty of an offense committed by another person when, with the intention of promoting or facilitating the commission of the offense, he:

(a) Solicits, commands, or engages in a conspiracy with such other person to commit the offense; or

(b) Aids, counsels, or attempts to aid such person in planning or committing the offense; or

(c) Having a legal duty to prevent the commission of the offense, fails to make a proper effort to do so.

(2) When causing a particular result is an element of an offense, a person who acts with the kind of culpability with respect to the result that is sufficient for the commission of the offense is guilty of that offense when he:

(a) Solicits or engages in a conspiracy with another person to engage in the conduct causing such result; or

(b) Aids, counsels, or attempts to aid another person in planning, or engag-

---

2. Kentucky Rule of Criminal Procedure.

3. Kentucky Revised Statute.

ing in the conduct causing such result; or

(c) Having a legal duty to prevent the conduct causing the result, fails to make a proper effort to do so.

*Tharp v. Commonwealth,* 40 S.W.3d 356, 360 (Ky.2000) (emphasis removed). The Supreme Court continued, noting that

[t]he primary distinction between these two statutory theories of accomplice liability is that a person can be guilty of "complicity to the act" under KRS 502.020(1) only if he/she possesses the *intent* that the principal actor commit the criminal act. However, a person can be guilty of "complicity to the result" under KRS 502.020(2) *without the intent* that the principal's act cause the criminal result, but with a state of mind which equates with "the kind of culpability with respect to the result that is sufficient for the commission of the offense," whether intent, recklessness, wantonness, or aggravated wantonness.

*Tharp,* 40 S.W.3d at 360 (emphasis added).

In the present case, the jury instruction for manufacturing methamphetamine read in pertinent part as follows:

You will find the Defendant guilty of Manufacturing Methamphetamine under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt the following:

**A.** That in this county on or about the 4th day of January, 2012, and before the finding of the Indictment herein, he knowingly had in his possession with the intent to manufacture methamphetamine two (2) or more of the chemicals or two (2) or more of the items of equipment for its manufacture.

**OR**

**B.** That in this county on or about the 4th day of January, 2012, and before the finding of the Indictment herein, the Defendant, while acting in complicity with Timmy Curtis, aided, assisted or counseled him in possessing with the intent to manufacture methamphetamine two (2) or more of the chemicals or two (2) or more of the items of equipment for its manufacture.

Smith contends that "[t]he problem with the jury instruction lies in (B) where it fails to include that [Smith] had the intent that Timmy Curtis manufacture methamphetamine. It merely requires that [Smith] act in complicity with Timmy, who must possess with the intent to manufacture the two items of equipment or chemicals." He explains that his argument is that "[c]omplicity to manufacture methamphetamine is essentially a double intent crime, requiring intent on the part of the principal and accomplice."

However, the Supreme Court in *Tharp* did not find that complicity under KRS 502.020(2) requires proof of the intent of the principal and the accomplice. Rather, the Court held that a person can be guilty of complicity to the result *without* the intent that the principal's act cause the criminal result, but with a state of mind which equates with culpability regarding the result. In the present case, the jury instruction properly complied with *Tharp.* Therefore, there was no error in the jury instruction, palpable or otherwise.

## D. DIRECTED VERDICT

Finally, Smith alleges that a directed verdict should have been granted on both counts submitted to the jury, due to the lack of evidence that Smith possessed any of the items in this case. He asserts that during trial, defense counsel argued that constructive possession could not be inferred and that actual possession had to be proven, but it was not.

In *Commonwealth v. Benham,* 816 S.W.2d 186, 187 (Ky.1991), the Kentucky Supreme Court explained the trial court's role in evaluating a motion for a directed verdict:

> On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.

(Internal quotation marks and citations omitted). For appellate purposes, "the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then [is] the defendant ... entitled to a directed verdict of acquittal." *Id.* (citing *Commonwealth v. Sawhill,* 660 S.W.2d 3 (Ky.1983)).

The circuit court in the present case denied Smith's motion for a directed verdict, reasoning that Smith was in his truck and he had control over the vehicle; the articles in question were on the seat between the two men in the truck, and the tubing and generator were in plain view; and when police caught Smith, he said something to the effect of "you caught me now," once before he was Mirandized[4] and once after he was Mirandized, according to testimony presented at trial. Upon review of the video recording of the trial, we find the circuit court correctly reiterated the pertinent facts pertaining to this issue that were presented through testimony at trial. There was sufficient evidence to induce a

reasonable juror to find beyond a reasonable doubt that Smith was guilty of the offenses charged. Consequently, the circuit court did not err in denying Smith's motion for a directed verdict.

Accordingly, the judgment of the Monroe Circuit Court is reversed in part because the circuit court abused its discretion in denying Smith's motion for a continuance. The remainder of the Monroe Circuit Court's judgment is affirmed, and the case is remanded for a new trial due to the court's error in denying Smith's motion for a continuance.

ALL CONCUR.

---

4. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).