LAMBERT, D., JUDGE:
Kibrom Zewoldi brings this appeal from several rulings by the Jefferson Circuit Court related to the trial of his personal injury claim against the Transit Authority of River City ("TARC") and its employee, *844 Carolyn Bryant (collectively, "the Appellees"). Zewoldi contends that the trial court: improperly excluded expert witness testimony and documentary evidence, abused its discretion in failing to grant a continuance, and failed to give a jury instruction as to punitive damages.
Having reviewed the record, we agree with Zewoldi as it relates to the fettering of his expert's testimony, as to the admissibility of his medical records, as to the admissibility of Bryant's employee records, and in the denial of a continuance. On those issues we reverse the trial court. As for the remaining allegations of error, the admissibility of the written statements of the other passengers and the denial of a punitive damages instruction, we find no error by the trial court and affirm.
But because we reverse the trial court on issues substantially affecting the evidence, we must remand the matter for further proceedings before the trial court.
I. FACTUAL AND PROCEDURAL HISTORY
A thunderstorm struck Louisville on the night of July 1, 2012, which disrupted electrical service throughout the city and left traffic signals temporarily inoperative. At approximately 10:45 P.M., while the city was darkened, a public transportation coach owned by TARC and driven by Bryant, collided with another vehicle as it passed through a downtown intersection. Four passengers of the coach, including Zewoldi, required emergency medical treatment at University of Louisville Hospital. Zewoldi had sustained a broken jaw, which required surgery to repair approximately six months later.
Bryant distributed witness statement forms to the passengers after the crash, per TARC's policy regarding collisions involving its vehicles. On these forms, the passengers each gave a brief written statement regarding the circumstances of the crash.
All four injured passengers filed civil actions. Those actions were consolidated and the other three passengers settled their claims, leaving only Zewoldi's claims for trial.
Discovery became a contentious issue. The trial court issued a scheduling order on July 21, 2014, which set the matter for trial on Monday, March 2, 2015, and directed Zewoldi to make his expert witness disclosures by December 2, 2014. The order further cautioned that failure to meet this deadline could result in sanctions.
Zewoldi, having not yet disclosed any expert witnesses, moved to continue the trial on December 31, 2014, arguing that neither party had completed discovery. Though the motion itself did not identify any specific witnesses or documents outstanding, Zewoldi noticed a deposition on January 2, 2015, for the records custodian of the University of Louisville Hospital to take place on January 14, 2015. At the hearing on the motion on January 5, 2015, Zewoldi argued that that no identifiable prejudice would result from the granting of a continuance. Notwithstanding the forthcoming deposition and the outstanding discovery, the trial court denied this motion, and ordered that the trial should proceed as scheduled.
Zewoldi tendered his CR[2] 26 expert witness disclosure on January 6, 2015, about a month after the court's deadline but still nearly two months ahead of the trial date. This disclosure related to Kevin Potts, M.D., who would not only offer factual testimony regarding Zewoldi's course of medical treatment as his physician, but *845 also render expert opinions as to causation of his injury, the likelihood of future medical expenses, and also for rebuttal of any experts the Appellees may offer.
The Appellees also failed to meet their expert disclosure deadline, though the Appellees' counsel noted at oral argument in this appeal that they did not feel compelled to produce their own expert because Zewoldi, as the party bearing the burden of proof, had already failed to make his disclosure.
The Appellees moved to strike Zewoldi's expert disclosure and exclude Dr. Potts' testimony entirely. The trial court partially granted that motion, restricting Potts' testimony to "expert opinions memorialized in the Plaintiff's medical records." On the other hand, the same order also permitted the Appellees to present expert testimony. The Appellees finally disclosed their own expert six days before trial, on February 24, 2015.
On January 12, 2015, TARC tendered responses to Zewoldi's outstanding requests for admissions, interrogatories, and requests for production of documents. Request No. 5 of his requests for production of documents simply stated: "Please provide the entire personnel file of Defendant Bryant." TARC responded by attaching what Zewoldi believed to be Bryant's complete file. However, approximately six weeks later, on Friday, February 27, 2015, TARC produced a previously undisclosed part of Bryant's employment file to Zewoldi. TARC made this disclosure just before the close of business that Friday, with the trial scheduled to begin the following Monday morning. TARC justified this extremely late disclosure by alleging the documents had been missing or misplaced. Simultaneously therewith, TARC also identified a new witness it intended to call at trial, TARC employee Terry Brown.
Zewoldi sought to introduce certain documentary evidence at trial. Among these records was the portion of Bryant's employment record TARC had provided-nearly literally-on the eve of trial. It documented numerous infractions by Bryant, contained a recommendation that Bryant be suspended from driving that dated from before the crash at issue here, and noted her termination after the crash. Other records Zewoldi sought to enter included the written statements regarding the crash given by other passengers on the bus, and Zewoldi's full medical records reflecting his injuries. The trial court excluded these records on hearsay grounds.
Zewoldi also tendered jury instructions which included an instruction relating to punitive damages. Yet the set of instructions ultimately issued by the trial court to the jury did not contain such an instruction. The trial judge concluded, at the close of the evidence, that the evidence fell short of the level of negligence necessary to justify a punitive damage instruction. For that reason, the trial court removed that issue from the jury's purview.
After four days of evidence, the jury deliberated and returned a verdict unfavorable to Zewoldi. The jury found that neither Bryant nor TARC had behaved in a negligent manner. A judgment reflecting the jury's verdict was entered on March 12, 2015. This appeal followed.
II. ANALYSIS
A. STANDARD OF REVIEW
This appeal presents allegations of error in several different areas: discovery, evidence, case management, and jury instruction, though each is ultimately reviewed under the same standard, abuse of discretion.
Zewoldi's first assignment of error, that the trial court improperly excluded the majority of Potts' testimony due to *846 the untimely CR 26 disclosure, presents a question of the trial court's authority to impose sanctions for violations of orders related to discovery. Trial courts have broad discretion in tackling violations of discovery orders. Turner v. Andrew , 413 S.W.3d 272, 279 (Ky. 2013). Consequently, "[w]e review a trial court's grant or denial of discovery sanctions, including fee awards, for abuse of discretion[.]" Rumpel v. Rumpel , 438 S.W.3d 354, 361 (Ky. 2014) (citing Turner, 413 S.W.3d at 279 ).
Zewoldi's second assignment of error is that the trial court improperly excluded various documents from introduction. Appellate courts review evidentiary decisions for abuse of discretion. Ross v. Commonwealth , 455 S.W.3d 899, 912 (Ky. 2015).
Zewoldi next contends that the trial court improperly denied his motion for a continuance. "A court has broad discretion in controlling the disposition of the cases on its docket and in determining whether to grant a continuance." Smith v. Commonwealth , 481 S.W.3d 510, 514 (Ky. App. 2016). On the other hand, in exercising that discretion, the trial court " 'must weigh competing interests and maintain an even balance.' " Rehm v. Clayton , 132 S.W.3d 864, 869 (Ky. 2004) (quoting Landis v. North American Co. , 299 U.S. 248, 254-55, 57 S.Ct. 163, 166, 81 L.Ed. 153 (1936) ).
Zewoldi argues that the trial court erred in failing to instruct the jury as to punitive damages. He argues that such errors are reviewable de novo , citing Pezzarossi v. Nutt , 392 S.W.3d 417 (Ky. App. 2012). This argument highlights a common misconception clarified by the Kentucky Supreme Court in Sargent v. Shaffer , 467 S.W.3d 198 (Ky. 2015). There are two types of errors that a trial court may make in instructing a jury. The first type of error lies in the decision whether to give a particular instruction, which "inherently requires complete familiarity with the factual and evidentiary subtleties of the case .... [T]he trial judge's superior view of that evidence warrants a measure of deference from appellate courts that is reflected in the abuse of discretion standard." Id. at 203. The second type of error regards the content of a jury instruction; that is, whether it correctly states the law, "is an issue of law that must remain subject to de novo review by the appellate courts." Id. at 204. The instruction error asserted by Zewoldi in this appeal falls into the former category, and accordingly, we will examine the record for abuse of discretion.
A trial court has abused its discretion when its ruling reflects arbitrariness, unreasonableness, unfairness, or a lack of support from sound legal principles. Commonwealth v. English , 993 S.W.2d 941, 945 (Ky. 1999).
B. THE TRIAL COURT ABUSED ITS DISCRETION IN RESTRICTING DR. POTTS' TESTIMONY
Taken in a vacuum, the trial court's decision to restrict the testimony of Zewoldi's expert to those opinions memorialized in his medical records might not seem like an abuse of discretion, particularly when Zewoldi did not dispute his failure to make a timely formal CR 26 disclosure according to the trial court's scheduling order.
However, taking the totality of the circumstances into account, we cannot conclude the trial court acted appropriately. Not only did the trial court deprive Zewoldi of any ability to present expert medical evidence as to the causation of his injury and of his potential damages, it allowed the Appellees' expert testimony-which was almost exclusively about causation-to be heard, unchallenged, by the jury, despite a disclosure of that expert witness only six days prior to trial. Moreover, Zewoldi's disclosure, while admittedly untimely, *847 occurred well in advance of the trial date, allowing the Appellees time enough to retain an expert of their own. The Appellees had actual knowledge of Zewoldi's medical history and of Dr. Potts' opinions months ahead of the trial date, so the purpose of CR 26, to prevent prejudicial surprise, was not impaired by Zewoldi's late disclosure.
"[W]hatever is essentially unjust and unequal or exceeds ... reasonable and legitimate interests ... is arbitrary." Kentucky Milk Marketing and Antimonopoly Comm'n v. Kroger Co. , 691 S.W.2d 893, 899 (Ky. 1985). When examining the record for arbitrary action, "[w]e are primarily concerned with the product and not with the motive or method which produced it." National-Southwire Aluminum Co. v. Big Rivers Elec. Corp. , 785 S.W.2d 503, 515 (Ky. App. 1990) (citing Louisville & Jefferson County Metro. Sewer Dist. v. Joseph E. Seagram & Sons , 307 Ky. 413, 211 S.W.2d 122 (1948) ).
Here, although the motive of the trial court was to ensure compliance with the discovery rules, the "product" was significant prejudice to Zewoldi. The jury was given an incomplete and substantially one-sided picture of the facts and then asked to base its verdict on that limited information.
The trial court acted arbitrarily in limiting the testimony of Zewoldi's expert witness for untimely disclosure while at the same time failing to limit the testimony of the Appellees' expert witness whose untimely disclosure was even more severe.
C. THE TRIAL COURT ABUSED ITS DISCRETION IN EXCLUDING ZEWOLDI'S MEDICAL RECORDS AND BRYANT'S EMPLOYEE RECORDS ON HEARSAY GROUNDS
The trial court excluded Zewoldi's medical records and Bryant's employee records as hearsay. Zewoldi argues that these documents fall within the business records exception to the hearsay rule, Kentucky Rule of Evidence ("KRE") 803(6).
Regarding Zewoldi's medical records, he specifically argues that because they contain statements for diagnosis, and further because such medical records are kept in the regular course of business for University of Louisville Hospital, then the medical records are self-authenticating business records under KRE 902(11) in conjunction with KRS 422.200, and are admissible under KRE 803(6) without the need for a foundation witness.
KRE 803(6) reads:
(6) Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.
(A) Foundation exemptions. A custodian or other qualified witness, as required above, is unnecessary when the evidence offered under this provision consists of medical charts or records of a hospital that has elected to proceed *848 under the provisions of KRS 422.300 to 422.330, business records which satisfy the requirements of KRE 902(11), or some other record which is subject to a statutory exemption from normal foundation requirements.
(B) Opinion. No evidence in the form of an opinion is admissible under this paragraph unless such opinion would be admissible under Article VII of these rules if the person whose opinion is recorded were to testify to the opinion directly.
The Kentucky Supreme Court has previously noted that KRE 803(6) may apply to render self-authenticating medical records admissible. Matthews v. Commonwealth , 163 S.W.3d 11, 22 (Ky. 2005). Though Matthews also cautions that admissibility of self-authenticated documents is not guaranteed in cases where other barriers to admissibility exist ( id. (citing Young v. J.B. Hunt Transp., Inc. , 781 S.W.2d 503 (Ky. 1989) ), no such barriers exist here. The documents were prepared by an individual with personal knowledge of the subject matter, in the course of the regularly conducted business activity of a hospital operating within KRS 422.200.
Similar reasoning applies to Bryant's employee records. Business records are admissible under KRE 803(6) when "both the maker of the record and the person providing the information for the record were acting under a business duty to do so and it was the regular practice of the business in question to make the memorandum, report or record." Thacker v. Commonwealth , 115 S.W.3d 834, 839 (Ky. App. 2003). TARC employee, Terry Brown, testified that these documents are customarily prepared for drivers-in-training such as Bryant as part of routine supervision. Brown's testimony also establishes the requisite facts necessary to self-authenticate under KRE 902(11).
In failing to apply the exception, the trial court abused its discretion in that its ruling was not based on the sound legal principles announced in Matthews and Young v. J.B. Hunt.
D. THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN EXCLUDING THE PASSENGER STATEMENTS
Zewoldi argues that the statements from the other passengers, which were collected by Bryant in the aftermath of the crash, should be admissible under the present sense impression exception to the hearsay rule. That exception reads: "Present sense impression. A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." KRE 803(1).
The Appellees argue that too much time passed between the incident and the statements to qualify the statements as present sense impressions. They point to Bray v. Commonwealth , 68 S.W.3d 375 (Ky. 2002), to stand for the proposition that "the statement must be made while the declarant is observing the event," in order to qualify as a present sense impression under KRE 803(1). Id. at 381, overruled on other grounds by Padgett v. Commonwealth , 312 S.W.3d 336 (Ky. 2010). In McBeath v. Commonwealth , 244 S.W.3d 22, 38 (Ky. 2007), the Kentucky Supreme Court held that a declarant's statement to the trial witness describing a phone conversation with the defendant immediately upon hanging up was admissible as a present sense impression. The Kentucky Supreme Court also held in Young v. Commonwealth , 50 S.W.3d 148, 165-66 (Ky. 2001), that an oral statement of a declarant to a police officer, wherein the declarant described *849 a shooting, given only seven minutes after the event, did not qualify as a present sense impression. "[The declarant]'s statement to [the officer] was not a present sense impression because the statement was not made contemporaneously with the event she was describing or immediately thereafter." Id. at 166.
The instant situation more closely parallels Young v. Commonwealth than McBeath or Bray . The record indicates that Bryant passed out the forms very soon after the incident, but the very nature of handing out forms and waiting for several individuals to write out and hand in their statements defeats the immediacy of those statements. Written statements imply the declarants had time to reflect and contemplate the events, which in turn connotes a lack of contemporaneousness. If a delay as short as seven minutes removes the statement from the immediate aftermath of the event for purposes of the exception, the brief delay here must as well.
We cannot conclude that the trial court abused its discretion in excluding the passenger statements as hearsay, and further that no exception applied to permit their introduction.
E. THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING ZEWOLDI'S MOTION FOR A CONTINUANCE
Zewoldi moved the court to continue the trial date due to ongoing discovery, coupled with the complexity of the issues. A review of the record reveals that at the time Zewoldi argued this motion, a deposition was forthcoming, and the Appellees' responses to his first set of requests for admissions, interrogatories, and requests for production of documents, were still outstanding. Nevertheless, the trial court denied this motion.
Whether a court should grant a continuance is matter of discretion which depends on its evaluation of a series of factors: 1) the length of the delay; 2) whether the court has granted previous continuances; 3) whether a continuance would result in inconveniences to counsel, witnesses, or the court; 4) whether the delay is purposeful or caused by the accused; 5) availability of competent alternative counsel; 6) the complexity of the case; and 7) whether denial of the continuance would cause identifiable prejudice. Guffey v. Guffey , 323 S.W.3d 369, 371 (Ky. App. 2010) (quoting Snodgrass v. Commonwealth , 814 S.W.2d 579, 581 (Ky. 1991), overruled on other grounds by Lawson v. Commonwealth , 53 S.W.3d 534 (Ky. 2001) ).
The trial court's written order did not reflect an analysis of these factors. But, even had the trial court included an analysis of those factors, the ruling would still be indefensible. The prejudice to Zewoldi is not only identifiable, it is undeniable. Basic discovery requests remained outstanding, witnesses had yet to be deposed, and the Appellees had yet to even identify some of the witnesses it would later call to give trial testimony. The only factor conceivably justifying the denial of the continuance would the inconvenience to the witnesses and the trial court, but this inconvenience does not outweigh the competing interest of avoiding significant prejudice to Zewoldi.
The trial court abused its discretion in denying the motion for a continuance.
F. THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN REFUSING TO INSTRUCT THE JURY ON PUNITIVE DAMAGES
A trial court has a duty to instruct the jury as to every theory of law reasonably supported by the evidence. Sargent , 467 S.W.3d at 203. Punitive damages *850 are recoverable upon a jury finding that the tortfeasor's conduct "exceeded ordinary negligence whether such conduct was expressed as gross negligence, wantonness, or some other such term." Williams v. Wilson , 972 S.W.2d 260, 263 (Ky. 1998). Because "[t]here is no sharp, well-defined, dividing line between simple negligence and gross negligence[,]" the degree of negligence is a question to be resolved by a jury. Darnell v. Hamilton , 358 S.W.2d 361, 362 (Ky. 1962) ; see also Douglas v. Wood , 254 S.W.2d 490 (Ky. 1953).
The contrary also rings true. Where there is no evidence of record from which the jury might conclude a plaintiff is entitled to punitive damages, the trial court is under no obligation to instruct the jury as to the option to award them. The trial court, after having heard the evidence, determined that to have been the case here. Under Sargent , we must defer to the trial court's factual determination as to the evidence presented before it. We, therefore, cannot conclude that the trial court abused its discretion in refusing to instruct the jury on punitive damages.
This conclusion, of course, should have no effect on the jury instructions given in any retrial in this matter. The evidence presented, by virtue of this opinion, will differ from the evidence presented in the original trial. The trial court should look only to the evidence presented in those proceedings to determine whether such instruction is necessary in those proceedings.
III. CONCLUSION
This Court concludes that the trial court abused its discretion and committed reversible error in limiting the testimony of Zewoldi's medical expert, in excluding Zewoldi's medical records, in excluding Bryant's employee records, and in denying Zewoldi's motion for a continuance to complete discovery. On the other hand, we find no abuse of discretion or error in the trial court's exclusion of the written statements of the passengers of the bus on the basis of hearsay, or in the trial court's refusal to instruct the jury on punitive damages.
Consequently, we affirm in part, reverse in part, and remand the matter for a new trial.
THOMPSON, JUDGE, CONCURS.
SMALLWOOD, JUDGE, CONCURS IN RESULT ONLY.

Kentucky Rule of Civil Procedure.