(628 P.2d 1071)
No. 51,582

T. R. KRINGS, *Appellant,* v. SAFECO INSURANCE COMPANY OF AMERICA, and GENERAL INSURANCE COMPANY OF AMERICA, *Appellees.*

Opinion filed May 29, 1981.

*L. D. McDonald, Jr.,* of McDonald & Dykes, of Overland Park, and *John C. Risjord,* of Niewald, Risjord & Waldeck, P.C., of Kansas City, Missouri, for appellant.

*Jack Scott McInteer,* of Wichita, for appellees.

Before JUSTICE FROMME, presiding, PARKS, J., and TYLER C. LOCKETT, District Judge, assigned.

LOCKETT, J.: T. R. Krings appeals from the order of the trial court sustaining the motion for summary judgment of the defendants Safeco Insurance Company and General Insurance

Company. The trial court found that Krings' actions were not covered under a homeowner's policy or an excess insurance policy issued by the defendants due to the "business pursuits" exclusion contained within the policies.

Krings was the named insured under a homeowner's policy issued by Safeco Insurance Company, and a Personal Top Notch Policy for excess coverage issued by a Safeco subsidiary, General Insurance Company. Both policies were in effect when the cause of action arose.

Krings had been in the insurance business since graduating from business college in 1934. During his career, he held positions in underwriting, sales, and management. When purchasing the policies, Krings simply indicated the form number and policy type he desired without telling the agent the perils against which he wanted to protect.

Appellant Krings became an honorary director of the Kansas Savings and Loan Association in 1969; a full director in 1970, and in 1972 became Chairman of the Board of Directors, a position he held until his resignation in 1976. Krings received no fee for sitting on the board until 1972 when he received an honorarium of $25 per meeting; in 1974, this sum was increased to $50 per meeting. Krings also owned common stock in the Kansas Savings and Loan Association, in one year purchasing stock in the amount of $320,000.

Sometime in 1975, Krings became aware of loan delinquencies with affiliated companies and alleged self-dealing by other members of the board. He resigned from the Board of Directors on February 1, 1976, after disagreeing with the majority ownership's management policy concerning these delinquencies.

In the summer of 1977, Kansas Savings and Loan Association went into receivership and Krings was sued in five separate lawsuits as a result of his activities with the Association. On January 3, 1978, Krings wrote Safeco demanding defense of these lawsuits under the terms of his homeowner's policy. Appellees denied coverage and Krings filed suit for failure to provide defense. Appellees filed a motion for summary judgment, claiming that the liabilities arising out of appellant's activities as an officer and Chairman of the Board were not covered under the provisions of the homeowner's or the excess coverage policies. The trial court sustained this motion.

The exclusionary clause in the homeowner's policy stated:

"This policy does not apply:
"1. Under Coverage E—Personal Liability and Coverage F—Medical Payments to Others:

. . . .

"d. to bodily injury or property damage arising out of business pursuits of any insured except activities therein which are ordinarily incident to non-business pursuits."

The excess policy provides coverage for personal injury or property damage. Under personal injury, the policy excludes coverage for:

"[A]ny business pursuits or business property (other than farms) of an insured unless insurance is provided therefor by an underlying policy or insurance listed in the policy Schedule of Underlying Insurance, and then not for broader coverage than is provided by such insurance . . . ."

Both policies defined "business" to include trade, profession or occupation.

We have carefully reviewed the record and briefs filed in this case and conclude that the trial judge correctly stated the law in his Memorandum Decision. Therefore, we are adopting the pertinent portions of that decision as our opinion in this matter:

"The determination of this case revolves around the interpretation of certain clauses included in the issued policies. [Footnote omitted.] The 'business pursuits' clause is under examination in this decision. The 'business pursuits' exclusion is a common exception to broad coverage provided in homeowners and general liability insurance policies. The reason for this particular exclusion from the general coverage provided in the policy has been analyzed and summarized by various commentators. They are in agreement that the exclusion of business liability removes coverage which is not essential to the purchasers of the policy and which would normally require specialized underwriting and rating, and thus keeps premium rates at a reasonable level. See Frazier, *The 'Business Pursuits' Exclusion in Personal Liability Insurance Policies,* 572 Insurance L.J. 519, 520 (1970); Frazier, *The Business-Pursuits Exclusion Revisited,* 649 Insurance L.J. 88, 89 (1977).

"Kansas courts have not had the opportunity to determine what activities are excluded under the 'business pursuits' clause. Other courts, however, have generally followed the view expressed in *Fadden v. Cambridge Mutual Fire Insurance Co.,* 51 Misc. 2d 858, 274 N.Y.S.2d 235, 241 (1966):

" 'To constitute a business pursuit, there must be two elements: first, continuity, and secondly, the profit motive; as to the first, there must be a customary engagement or a stated occupation; and, as to the latter, there must be shown to be such activity as a means of livelihood, gainful employment, means of earning a living, procuring subsistence or profit, commercial transactions or engagements.'

This two-prong definition has been overwhelmingly followed in the jurisdictions which have addressed the issue. Annot: *Liability Insurance—'Business Pursuits,'* 48 A.L.R.3d 1096 (1973) and 48 A.L.R.3d 1096 (1978 Supp.). A minority of courts have taken the view that a business pursuit includes every activity where profit is a motive. *Salerno v. Western Casualty & Surety Company,* 336 F.2d 14 (8th Cir. 1964). It is the opinion of this court that the two-step approach of *Fadden* is the better test.

. . . .

"Plaintiff received no fee for sitting on the Board until 1972. At that time he [was] paid $25 per meeting which was subsequently raised to $50 per meeting in 1974. This court finds that such payment was direct compensation for his services. Further, plaintiff had invested $320,000 in Kansas Savings and Loan Association stock. He obviously hoped to manage the business in such a way so as to gain [for] himself the greatest possible profit from his investment. It cannot be disputed that the above facts indicate that plaintiff's service on the Board of Directors at Kansas Savings and Loan Association was a regular activity engaged in with a profit motive.

"In *Stern v. Insurance Company of North America,* 62 N.J. 582, 303 A.2d 883 (1973), the New Jersey courts considered a case with similar facts. Stern was engaged in the trucking and warehousing business. He was elected a director of a local bank. The bank was adjudicated insolvent and Stern was sued by various shareholders for breaching his duties of due care and diligence in his conduct as director of the bank. He had earlier purchased an excess coverage insurance policy and then demanded that the insurer defend the pending litigation. Coverage was denied by the insurer and a lawsuit followed. The trial court granted summary judgment to the defendant insurer. The trial court stated:

" 'This Court finds and so determines that the plaintiff's service on the Board of Directors of the bank was a business pursuit for which he was compensated regardless of his claim that said payment for attendance at the meetings was an "honorarium." That is his categorization of the remuneration and one which the Court finds no evidence to support. This Court finds that such payment was a direct compensation for his services. . . .

. . . . .

" '. . . Plaintiff's election to and service on the Board of Directors of the bank was a business pursuit and as such is excluded from coverage under the policy in question.'

The Appellate Court affirmed and the Supreme Court of New Jersey agreed with the decision of the trial court and the Appellate Division in a very short opinion.

"This Court finds *Stern* very persuasive. In fact, the case at hand presents a stronger factual situation than *Stern. Stern* was a director only nine months and attended only eight meetings. Further, Stern had no investment in the bank. The *Stern* court found the activities of Stern as an 'outside' director of a bank to be a 'business pursuit' and the logic and analysis of that decision is applicable to the matter at hand.

"Plaintiff contends that the reference in the policies to trade, profession or occupation is limiting language and therefore, plaintiff's activity as a director of Kansas Savings and Loan Association could not be considered one of the afore-mentioned. Courts have rejected the contention that part-time or supplemental

income activities are not 'business pursuits.'[1] See, *e.g. Wiley v. Travelers Insurance Company,* 534 P.2d 1293 (Okla. 1974); *Sou. Guaranty Ins. Co. v. Duncan,* 131 Ga. App. 761, 206 S.E.2d 672 (1974); *State Mutual v. Abbott,* 52 Mich. App. 103, 216 N.W.2d 606 (1974); *Automobile Underwriters v. Hitch,* 169 Ind. App. 453, 349 N.E.2d 271 (1976).

"The plaintiff is correct in his analysis of insurance contract interpretation. The Supreme Court of Kansas in *Gowing v. Great Plains Mutual Ins. Co.,* 207 Kan. 78, 483 P.2d 1072 (1971), established the principles that must be considered when interpreting insurance contracts. The first is:

" 'In determining the intention of the parties to a contract of insurance, the test is not what the insurer intends the printed language to mean, but rather what a reasonable person in the position of the insured would have understood the words to mean.' 207 Kan. 78, Syl. ¶ 2.

The second applicable principle is:

" 'Where provisions of an insurance policy are ambiguous or conflicting, the policy is to be construed strictly against the insurer and in favor of the insured.

. . . .

" 'Where an insurer intends to limit or restrict the coverage under its policy, it should use language which clearly reveals its stated purpose.' 207 Kan. 78, Syl. ¶¶ 1, 4.

"An analysis of the first reveals that a reasonable man in the plaintiff's shoes would have understood the purposes of homeowners and excess insurance policies. The plaintiff had been involved in the insurance business for many years. He had held positions in virtually every phase of the business. He was aware that the insurance companies sell director's and officer's liability insurance policies for the activities that he engaged in here.

"The Court further finds no inherent ambiguity exists. The policy was not created to cover 'business pursuits.' The clear language of the policy combined with the generally accepted, valid rate-making reasons as to why such an exception would be included speak persuasively for the conclusion that it was not the intent of the parties at the time the contract was formed to provide the coverage sought in this case. This Court, therefore, concluded that the 'business pursuits' exclusion to plaintiff's policies was intended to cover and does in fact encompass his activities as director of the Kansas Savings and Loan Association. It is further concluded that this exclusion, as applied in the present case, operates to preclude liability on the part of his insurer for any damages that resulted from plaintiff's position as director. To hold otherwise would require this Court to rewrite the insurance contract making the insurer liable for risks not included in the original rate-making calculations and not paid for by insured. . . .

. . . .

"This Court has carefully considered the pleadings, depositions, and briefs filed by the respective parties and the arguments of counsel. After due consideration thereof, and for the reasons set out above, this Court has determined that

---

1. Furthermore, use of the plural "pursuits" as opposed to the singular "pursuit" negates the inference that only the principal or sole trade or profession of the insured is excluded under the policy. [Footnote by appellate court.]

defendants' motion for summary judgment should be granted. The plaintiff's service on the Board of Directors of Kansas Savings and Loan Association was a 'business pursuit' and as such is excluded from coverage under the policies in question."

We conclude that the trial court did not err in sustaining appellees' motion for summary judgment. The judgment is affirmed.