**Sandra K. EYLER, Appellant/Cross–Appellee,**

v.

**NATIONWIDE MUTUAL FIRE INSURANCE COMPANY, et al., Appellees/Cross–Appellants.**

**Nos. 90–SC–680–DG, 91–SC–002–DG.**

Supreme Court of Kentucky.

Feb. 13, 1992.

Bernard J. Blau, Jolly & Blau, P.S.C., Cold Spring, for appellant/cross-appellee.

Stephen D. Wolnitzek, Smith, Wolnitzek, Schachter & Rowekamp, P.S.C., Covington, Patrick C. Hickey, Edgewood, for appellees/cross-appellants.

LAMBERT, Justice.

The "Golden Blanket Homeowners Policy" was issued by appellee/cross-appellant, Nationwide Mutual Fire Insurance Company, to Larry Lusby. The policy insured Lusby's dwelling against fire and windstorm, but in Section II, the policy also provided Lusby, subject to certain exclusions, with protection from personal liability for his tortious conduct. It is conceded by the parties and was acknowledged by the courts below that the injury which brought about this litigation is a "covered" occurrence under the personal liability coverage of the policy unless one or more of the exclusions defeats coverage. This Court granted the motion and cross motion for discretionary review to construe the relevant exclusions in the policy.

The bizarre facts of this case are not significantly disputed. For several years prior to 1985, Charles Wanner accumulated and stored used vehicle tires on a farm he owned in Campbell County. By 1985 there were in excess of one million such tires and it was Wanner's intention to sell them to the Chinese government for their petroleum content. When the sale to the Chinese did not reach fruition, Wanner encountered financial difficulty and sought assistance from Larry Lusby. To bring Wanner's indebtedness current, Lusby agreed to borrow $75,000 and become a partner in the anticipated sale of the tires. As Lusby's assets were insufficient collateral for a $75,000 loan, Wanner conveyed the tire storage property to Lusby who obtained the loan by encumbering the property and his personal dwelling. When the intended sale still was not consummated, Lusby, too, fell on hard times and became delinquent in payment of the mortgage loan. In an effort to generate some income from the property, Lusby sought an additional loan from the bank to improve a building on the premises for rental as an apartment. In preparation for an inspection from a bank officer, Lusby undertook to have the property around the building cleaned up and this required relocation of some of the vehicle tires.

To perform the cleanup, Lusby hired Bruce Smith and instructed him to roll the tires from around the building down a hill. As Smith was rolling the tires as instructed by Lusby, appellant/cross-appellee, Sandra K. Eyler, was struck and suffered severe personal injuries.

As the sole issue before the Court is the proper construction of two exclusions in the policy, it is unnecessary to dwell upon the procedural history of this case. In summary, however, it appears that Sandra K. Eyler sued Larry Lusby and that Nationwide denied coverage and refused to defend on Lusby's behalf. Under the authority of *Grundy v. Manchester Ins. and Indemnity Co.*, Ky., 425 S.W.2d 735 (1968); *State Farm Mutual Ins. v. Marcum*, Ky., 420 S.W.2d 113 (1967); and *Critz v. Farmers Ins. Group*, 230 Cal.App.2d 788, 41 Cal.Rptr. 401 (1964), for valuable considera-

tion, Lusby properly assigned his rights against Nationwide to Eyler who ultimately recovered judgment against Nationwide.

THE "OTHER PREMISES" EXCLUSION

▮▮▮ Nationwide contends and the Court of Appeals agreed that the exclusion contained in Section II(1)(d) defeats coverage. This provision excludes personal liability and medical payments for an occurrence "arising out of premises owned or rented to an insured but not an insured location." Commonly, such exclusions are referred to as "other premises" exclusions.

This exclusion invalidates coverage for injury producing occurrences "arising out of [other owned premises]." Immediately, this phrase suggests the necessity for a causal connection between the premises and the injury. Ordinarily, "arising out of" does not mean merely occurring on or slightly connected with but connotes the need for a direct consequence or responsible condition. As we view it, to satisfy the "arising out of" exclusion in the policy, it would be necessary to show that the premises, apart from the insured's conduct thereon, was causally related to the occurrence. While most of the endeavors of mankind occur upon the surface of the earth and without it, harm could not occur, the law nevertheless imposes liability for negligent personal conduct upon the recognition that, in most cases, human behavior is the primary cause of the harm and the condition of the earth only secondary.

In a number of decisions, the dichotomy of causation between negligent personal conduct and dangerous condition of the premises has been acknowledged as controlling of the outcome. In *Lititz Mutual Ins. Co. v. Branch*, 561 S.W.2d 371 (Mo. App.1978), a dog bite was held not to have been "arising out of" the uninsured business premises so as to fall within the policy exclusion.

"Liability for injuries caused by an animal owned by an insured arises from the insured's personal tortious conduct in harboring a vicious animal, not from any condition of the premises upon which the animal may be located." *Id.* at 374.

Likewise, in *Lanoue v. Fireman's Fund American Ins. Cos.*, 278 N.W.2d 49 (Minn. 1979), the Court held that the insured's negligence in permitting a minor to gain access to whiskey on uninsured business premises did not arise out of the premises.

"[T]he premises must bear some causal relationship to the liability. Such a relationship is apparent when a claimant trips over improperly maintained steps.... The fact that something occurs at a place is not sufficient by itself to imply causation as to that place. It is more appropriate under the facts of this case to focus on the personal property— the whiskey—as being allegedly carelessly possessed by Lanoue at his office. Thus the liability is causally related to the whiskey, not the premises involved." *Id.* at 54.

In the foregoing and other decisions, courts have analyzed the occurrence to determine whether negligent personal conduct or the condition of the land bore the greater causal relationship to the harm. *See Hingham Mutual Fire Ins. Co. v. Heroux*, 549 A.2d 265 (R.I.1988); *Safeco Ins. Co. of America v. Hale*, 140 Cal.App.3d 347, 189 Cal.Rptr. 463 (1983); and *Hanson v. General Accident Fire & Life Ins. Corp., Ltd.*, 450 So.2d 1260 (Fla.Dist.Ct. App.1984).

Nationwide relies heavily upon *Arndt v. American Family Ins. Co.*, 394 N.W.2d 791 (Minn.1986), a decision in which an exclusion similar to the one here was held to invalidate coverage for an injury which occurred while the insured was unloading cornstalks on uninsured premises. Even though the insured's personal negligence was the cause of the injury, the Court reasoned that but for farming activities on the uninsured premises, the injury would not have occurred.

The exclusionary language in *Arndt* differs somewhat from the exclusion here, and the Supreme Court of Minnesota, the Court which rendered *Arndt* and *Lanoue v. Fireman's Fund American Ins. Co.*, *supra*, found the distinction controlling. We need not determine whether the decisions of the Supreme Court of Minnesota in

*Arndt* and *Lanoue* can be fully harmonized as this Court's decision in *United States Fidelity & Guaranty Co. v. Western Fire Ins. Co.,* Ky., 450 S.W.2d 491 (1970), more nearly follows the *Lanoue* view. In the Kentucky case, the issue was whether the accidental discharge of a firearm inside a moving automobile was an injury "arising out of the ownership, maintenance or use" of such automobile. We quoted with approval from an annotation in 89 A.L.R.2d 150 which states that a causal relation or connection must exist between the injury and the use of the vehicle for the injury to come within the "arising out of" clause. We said:

> "[T]he injury in the instant case was not sufficiently use-connected to be considered reasonably to have been within the contemplation of the parties to the automobile insurance contracts here involved." *United States Fidelity & Guaranty Co. v. Western Fire Ins. Co.,* 450 S.W.2d at 493.

For construction of "arising out of" in Workers' Compensation cases, see *Tyler–Couch Construction Co. v. Elmore,* Ky., 264 S.W.2d 56 (1954), and *Peoples Service Station, Inc., v. Pervis,* Ky., 379 S.W.2d 222 (1964).

Having determined that the controlling legal question is whether Lusby's personal conduct or the premises was the greater causative force in the harm which resulted, we need only quote from the trial court's opinion for a resolution. The court said:

> "Here the injury did not flow from the Wanner premises, but from the unrelated tortious act of Lusby.... The negligence here was apart from the premises. The negligence was found in Lusby's tortious act of rolling tires over the hill as opposed to a defect in the premises."

Accordingly, the "other premises" exclusion does not defeat coverage.

### THE "BUSINESS PURSUITS" AND RENTAL EXCLUSION

■ Nationwide also contends that the exclusion contained in Section II(1)(b) defeats coverage. This provision excludes personal liability and medical payments for an occurrence "arising out of business pursuits of an insured, or the rental or the holding for rental of any part of any premises by an insured." In the policy, "business" is defined to include "trade, profession, or occupation" and the exclusion does not apply to activities which are normally considered nonbusiness.

At length, the parties debate the holding of this Court in *Neal v. Celina Mutual Ins. Co.,* Ky., 522 S.W.2d 179 (1975), and the decision of the Court of Appeals in *Foster v. Allstate Co.,* Ky.App., 637 S.W.2d 655 (1981). In *Neal,* the accident occurred on the premises of an automobile service station, clearly business premises. The issue was whether the business pursuits exclusion applied to a nonbusiness incident, the accidental discharge of a firearm, which occurred on business premises. In *Foster,* the activity engaged in was babysitting, an activity acknowledged to be a business pursuit. As in *Neal,* the issue was whether the business pursuits exclusion applied when the injury producing activity was not ordinarily incident to operating a business. In each of these cases, the activity engaged in was acknowledged to be a business pursuit and the issue was whether an exception to the exclusion which appeared in the policy applied so as to render coverage available. As the issue here is whether the activity engaged in was a business pursuit within the meaning of the policy, these decisions have little application to the instant case.

This Court has not previously construed the phrase "business pursuit," the phrase which is controlling and which appears in many insurance policies. Numerous decisions from other jurisdictions, however, have construed this language and, in most cases, required a determination that the activity be for profit and that it be a continuous, customary activity.

> "As to what is an excluded 'business pursuit,' the Courts have generally taken the restrictive view that this phrase denotes a continuous or regular activity for the purpose of earning a livelihood, such as a trade, profession, or occupation, or a

commercial enterprise." Annot., 48 A.L.R.3d 1096 (1973).

In *Krings v. Safeco Ins. Co.*, 2 Kan.App.2d 391, 628 P.2d 1071 (1981), the Court of Appeals of Kansas described business pursuits as follows:

"To constitute a business pursuit, there must be two elements: first, continuity, and secondly, the profit motive; as to the first, there must be a customary engagement or a stated occupation; and as to the latter, there must be shown to be such activity as a means of livelihood, a gainful employment, means of earning a living, procuring subsistence or profit, commercial transactions or engagements." *Id.* 628 P.2d at 1074.

Likewise, in *Randolph v. Ackerson*, 108 Mich.App. 746, 310 N.W.2d 865 (1981), a full-time employee in the automotive industry purchased and razed an old barn for the value of the wood. To determine whether this activity amounted to a business pursuit under language similar to the language employed by Nationwide, the Court looked to the insured's customary occupation, whether he had engaged in such ventures in the past, and whether his involvement in the activity was continuous. The Court said:

"That is indicative of the singular nature of the activity in question. The fact that Defendant's venture required a great amount of effort and a great amount of time is not determinative. Since Defendant's activity was not a 'stated occupation' or a 'customary engagement,' it was not continuous." *Id.* 310 N.W.2d at 866.

Finally, by defining "business" to include "trade, profession, or occupation," the policy itself prevents an expansive interpretation of the term.

From the evidence, it is clear that Lusby was an investor in Wanner's business venture. He had not participated in acquisition of the tires on the property nor had he engaged in negotiating a sale with the Chinese. While Lusby undoubtedly intended to make a profit, his participation was limited to investing money and protecting his investment. Such is woefully insufficient to qualify as a business pursuit as the term

was defined in the authorities and the policy.

■ As to its final contention, Nationwide points to the rental property exclusion in the policy and makes an argument that it excludes coverage. This exclusion applies to the "rental or holding for rental of any part of any [uninsured] premises."

We need not belabor this issue as it is firmly refuted by the facts. Lusby hired Smith to remove the tires from around the building to make the property more presentable for an inspection by a bank officer. Depending upon the outcome of the inspection and the bank's decision as to an additional loan, Lusby intended to renovate the building and then offer it for rental. As the foregoing facts demonstrate, at the time of the injury, the property was not rented nor was it being held for rental. A number of intermediate and uncertain steps were required before rental could even be considered.

## CONCLUSION

■ In summary, we recognize that the exclusionary provisions addressed herein may be subject to more than one good faith interpretation. As there is little controlling Kentucky authority, an effort has been made to join the mainstream of American law with respect to construction and interpretation of these policy provisions. However, as to the manner of construction of insurance policies, Kentucky law is crystal clear that exclusions are to be narrowly interpreted and all questions resolved in favor of the insured. *Koch v. Ocean Accident & Guaranty Corp.*, 313 Ky. 220, 230 S.W.2d 893 (1950); *Webb v. Kentucky Farm Bureau Ins. Co.*, Ky.App., 577 S.W.2d 17 (1978). Exceptions and exclusions are to be strictly construed so as to render the insurance effective. *State Automobile Mutual Ins. Co. v. Trautwein*, Ky., 414 S.W.2d 587 (1967); *Davis v. American States Ins. Co.*, Ky.App., 562 S.W.2d 653 (1977). Any doubt as to the coverage or terms of a policy should be resolved in favor of the insured, *Aetna Life & Casualty Co. v. Layne*, Ky., 554 S.W.2d 407 (1977). And since the policy is drafted in all details by the insurance company, it

must be held strictly accountable for the language used. *Wolford v. Wolford*, Ky., 662 S.W.2d 835 (1984).

When the foregoing principles of construction are applied to the exclusions in the policy, there can be little doubt that under these facts, personal liability coverage was not excluded. The decision of the Court of Appeals is reversed and the judgment of the trial court reinstated.

COMBS, LEIBSON, and WINTERSHEIMER, JJ., concur.

SIDNEY H. HULETTE, Special Justice, dissents by separate opinion in which STEPHENS, C.J., and SPAIN, J., join. REYNOLDS, J., not sitting.

SIDNEY H. HULETTE, Special Justice, dissenting.

We respectfully dissent from the opinion of the majority. We believe the activities of Larry Lusby constituted a business pursuit. Charles Wanner started this ill-conceived venture in the 1970's and continued it on into the 1980's, when Larry Lusby invested in it. Lusby's involvement began in September of 1985 and was ongoing at the time of the injury on August 27, 1986. Contacts were made with the Chinese government in an attempt to sell the 1,000,-000 tires. Contacts were also made with other prospective purchasers, with no success. If the tires had been sold, Lusby was to receive fifty percent (50%) of the profits. At the time of the injury, Lusby was having tires moved in order to make the property presentable in hopes of borrowing more money, the ultimate goal being a continuation of the venture.

Using the approach the Kansas court took in *Krings v. Safeco Ins. Co.*, 2 Kan. App.2d 391, 628 P.2d 1071 (1981), we see that in order to constitute a business pursuit, there must be "continuity" and a "profit motive." Once Lusby became involved in 1985, he stayed with the venture at least until the injury in August of 1986—almost a year. There is nothing to indicate he would not have continued his involvement had the injury not occurred. Apparently, there was a continuous effort being made to sell the tires during this entire period of time.

The motive for Lusby's getting involved in this activity was certainly for a profit. He acknowledged he was to receive fifty percent (50%) of whatever profit was derived from the tire sales.

In the case of *Saha v. The Aetna Casualty & Surety Co.*, 427 So.2d 316 (Fla.App. 5 Dist., 1983), a practicing physician purchased, in 1974, a small herd of cattle as a tax shelter and left them with the seller. Shortly thereafter, he purchased 22 acres of land for investment purposes. Subsequently, in 1979, he became unhappy with the care given his cattle; and, after making certain improvements to the 22 acres [including digging a pond], moved the cattle to that property. In 1981, a young child drowned in the pond. Aetna, the physician's homeowners carrier, denied coverage on the basis of two (2) exclusions, one of which was that the activity engaged in by the physician was a business pursuit. The Court held that both exclusions applied and denied coverage. In addressing the business pursuit exclusion, the Court looked to the policy definitions. The policy stated "business includes trade, profession or occupation." That is exactly the same definition used in this case.

The Florida court addressing this definition applied what we believe to be the correct interpretation. Citing the case of *Gaynor v. Williams*, 366 So.2d 1243 (Fla. 3rd DCA 1979), which construed an identical policy definition, the Florida court stated:

"... the word 'includes' is a term of expansion ... the definition here must be read to mean that business includes, but is not limited to the 'trade, profession or occupation' of the insured."

Although selling the tires was not Lusby's livelihood, it was nonetheless a business pursuit which he admittedly hoped would turn a profit. The fact that it did not turn a profit does not negate that. Likewise, in *State Farm Fire and Cas. Co. v. Drasin*, 152 Cal.App.3d 864, 199 Cal.Rptr. 749 (2 Dist., 1984), an attorney entered into a limited partnership arrangement to acquire mining leases. The purpose of the partnership was to produce income, profits and write-offs incidental to the mining opera-

tions. Things did not go as planned and suit was filed by Drasin, the attorney, who alleged misdeeds by the other partners and requested recision of the partnership agreement, restitution of investments, accounting and dissolution of the partnership. The other party prevailed and then sued Drasin for malicious prosecution. State Farm, his homeowners carrier, initially defended Drasin under a reservation of rights, but later filed an action for declaratory relief stating it had no duty to defend. Among the grounds sought for relief by State Farm was a business pursuit exclusion. Drasin contended the partnership activities were not business pursuits because his occupation was as an attorney. The State Farm policy defined business as "a trade, profession, or occupation...." In holding Drasin's activities constituted a business pursuit, the court considered the motivation for profit and the fact the partnership was operational for more than a year. In arriving at its decision, the California court cited *Gaynor v. Williams*, discussed in *Saha, supra;* and *Krings v. Safeco Ins. Co. of America*, relied on by the majority in this case. It also cited, with approval, *Insurance Law and Practice*, Appleman (1979), Vol. 7A, Section 4501.10, wherein Appleman indicates the applicability of the business pursuit exclusions is related to the motivation. The profit motive carries considerable weight, and the business engaged in need not be the sole occupation. Appleman believes part-time business activities are also included under business pursuits exclusions. We agree.

Lusby invested money, was involved in the venture for eleven (11) months prior to the injury, took title to land, tried to protect his investment, attempted to borrow money to prolong the venture, and was motivated by profit. We believe this constitutes a business pursuit and would deny coverage.

STEPHENS, C.J., and SPAIN, J., join in this dissenting opinion.