RENDERED: JANUARY 23, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0780-MR

STATE AUTO PROPERTY &
CASUALTY INSURANCE
COMPANY                                                              APPELLANT


APPEAL FROM JEFFERSON CIRCUIT COURT
v.          HONORABLE JULIE KAELIN, JUDGE
ACTION NO. 19-CI-008101


NUTHIN FANCY, INC. D/B/A DEL
FRISCO'S                                                              APPELLEE

AND

NO. 2024-CA-0831-MR


NUTHIN FANCY, INC. D/B/A DEL
FRISCO'S                                                    CROSS-APPELLANT


CROSS-APPEAL FROM JEFFERSON CIRCUIT COURT
v.          HONORABLE JULIE KAELIN, JUDGE
ACTION NO. 19-CI-008101

STATE AUTO PROPERTY &
CASUALTY INSURANCE
COMPANY                                                    CROSS-APPELLEE


OPINION
AFFIRMING IN PART AND REVERSING IN PART

** ** ** ** **

BEFORE:  CETRULO, KAREM, AND MOYNAHAN, JUDGES.

MOYNAHAN, JUDGE:  Appellant State Auto Property & Casualty Company

("State Auto") appeals two distinct orders from the Jefferson County Circuit Court:

(1) the January 3, 2023, Order granting Nuthin Fancy, Inc. d/b/a Del Frisco's ("Del

Frisco's") Motion for Summary Judgment, and (2) the Order entered on June 27,

2024, which ruled on other issues and made final the January 3, 2023, Order

granting Del Frisco's Motion for Summary Judgment.

        Because the Circuit Court properly found coverage in favor of Del

Frisco's, albeit on a different basis than we rely upon, we affirm that court's

Summary Judgment Order entered on January 3, 2023.  We reverse that portion of

the June 27, 2024, Order that limited Del Frisco's ability to identify additional

expert witnesses for trial and affirm the remainder of that Order.

**BACKGROUND**

        The material facts are not in dispute.  Beginning in 1981, Del Frisco's

rented space in a strip mall from the Galleria of St. Matthews ("the Galleria").  At

that location, the Galleria contained 13 total storefronts addressed in odd numbers from 4101–4125 along Oechsli Avenue. Del Frisco's occupied four storefronts located at 4103–4109 Oechsli Avenue.

In July 2019, Del Frisco's and the other businesses in the Galleria were forced to close when the mall's roof partially collapsed. Del Frisco's claims arise from a July 26, 2019, Order from the Louisville Office of Construction Review which declared the building unsafe and prohibited its occupancy. The actual roof collapse occurred over another tenant – Charim Korean Restaurant – located in the Galleria at 4123 Oechsli Avenue. The Galleria's partial roof collapse occurred less than 1,000 feet from Del Frisco's. Following the Office of Construction Review's Order, the entire strip mall was condemned and torn down.

Del Frisco's made a claim to State Auto for loss of business income arising from the July 26, 2019, Order from the Louisville Office of Construction Review. Subsequently, State Auto sent an engineer to The Galleria for an inspection. The engineer asserted that the premises leased by Del Frisco's were not directly impacted by the roof collapse. Following this inspection, State Auto notified Del Frisco's that the business income loss was not a result of direct physical loss or damage to covered property at the premises as described in the policy declarations and was, therefore, not covered under the policy. State Auto,

however, did provide limited coverage for business income loss caused by the actions of the civil authority and paid that claim.

Del Frisco's contends that for an annual premium of $18,805.12, State Auto issued a comprehensive 260-page Preferred Business Policy that did cover their losses, given the circumstances. Relevant here, Del Frisco's argues its Preferred Business Policy includes business personal property coverage and business income coverage, and that both coverages are expanded by a property plus endorsement ("PPE"). Critically, Del Frisco's highlights that the term "premises" is not separately defined in the business income policy documents. Instead, Del Frisco's points to the declarations sheet, which contained a "Description of Premises" that identified the premises as Del Frisco's location at 4106–4109 Oechsli Avenue.

For an additional premium, Del Frisco purchased the PPE which it argues increased the description of the premises in the declaration sheet to within 1,000 feet of 4106–4109 Oechsli Avenue. Additionally, Del Frisco's focuses on the PPE's Endorsement page and the PPE Table of Contents which showed an amended description of the premises boundary, increasing it to 1,000 feet. Consequently, Del Frisco's argues that the premises described in the declarations for the business income policy includes 4106–4109 Oechsli Avenue plus 1,000 feet.

All parties agree that State Auto made a payment of $29,325 under Del Frisco's civil authority coverage form. The coverage dispute herein focuses on whether Del Frisco's has valid claims under other provisions of its business income policy.

**PROCEDURAL HISTORY**

Del Frisco's filed suit against State Auto, asserting claims for declaration of rights and bad faith. Eventually, the bad faith claims were bifurcated. On March 31, 2022, State Auto filed a Motion for Summary Judgment that made two key arguments: (1) Del Frisco's is not entitled to coverage under Section A(1) of the Business Income Coverage Form because it suffered no physical damage to its property as a result of a covered loss, and (2) State Auto paid Del Frisco's in full under the additional coverages of its business income policy because civil authorities did prohibit access to the premises. Del Frisco's responded by cross-filing for summary judgment, seeking recovery of all coverages from its preferred business policy. After briefing and oral arguments, Judge Cunningham granted summary judgment to Del Frisco's on the issue of coverage in an interlocutory order.

In his Summary Judgment Order, entered January 3, 2023, Judge Cunningham applied the reasonable expectations doctrine, reasoning that "no business in its right mind would have continued to operate." State Auto filed a

timely Motion to Alter, Amend, or Vacate the Summary Judgment Order on January 12, 2023, thus preserving its appeal on the merits of that Order. After the motion was held in abeyance during further discovery, State Auto renewed its Motion with a request for oral argument on November 21, 2023. Judge Kaelin denied the request for oral arguments and set a briefing schedule. Briefing concluded by December 15, 2023, and the Court entered its Order denying the Motion to Alter, Amend, or Vacate on December 19, 2023.

On June 24, 2024, the Circuit Court held a hearing on two issues: (1) Del Frisco's Motion to Set Aside an Order entered June 12, 2024, precluding them from presenting expert testimony due to late disclosures, and (2) for "clarifying what exactly is to be tried, in what order, and whether together or bifurcated" at the trial scheduled for August 2024. In its Order entered June 27, 2024, the Court reviewed the Summary Judgment Order and granted Del Frisco's request that "State Auto pay all amounts owed under the Preferred Business Policy, including the Business Income and Extra Expense Coverage." Additionally, the Circuit Court found the earlier Summary Judgment Order ruling would "leave only the bad faith and extra-contractual claims." After its review, the court declined to "relitigate what it believe[d] to be the findings and orders of Judge Cunningham on January 3, 2023 . . . ." In effect, this reasoning reaffirmed the entry of summary

judgment in favor of Del Frisco's.  Both parties timely appealed different parts of the Summary Judgment Order.

## STANDARD OF REVIEW

### A. Summary Judgment

In ruling on summary judgment, "[t]he record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky. 1991).  "Appellate review of a summary judgment involves only legal questions and a determination of whether a disputed material issue of fact exists.  So, we operate under a de novo standard of review with no need to defer to the trial court's decision." *Adams v. Sietsema*, 533 S.W.3d 172, 177 (Ky. 2017).

### B. Interpreting Insurance Policies

"Interpretation and construction of an insurance contract is a matter of law for the court." *Kemper Nat. Ins. Companies v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869, 871 (Ky. 2002) (citations omitted).  "Where the terms of an insurance policy are clear and unambiguous, the policy will be enforced as written." *Id*. at 873 (citations omitted).  "The clear and unambiguous words of an insurance contract should be given their plain and ordinary meaning." *York v. Kentucky Farm Bureau Mut. Ins. Co.*, 156 S.W.3d 291, 293 (Ky. 2005) (citations

omitted).  There is "… a fundamental rule in the construction of insurance contracts that the contract should be liberally construed and any doubts resolved in favor of the insured."  *Dowell v. Safe Auto Ins. Co.*, 208 S.W.3d 872, 877-78 (Ky. 2006) (citations omitted).  Kentucky law utilizes several key principles in the construction of insurance policies:

> [A]s to the manner of construction of insurance policies, Kentucky law is crystal clear that exclusions are to be narrowly interpreted and all questions resolved in favor of the insured.  Exceptions and exclusions are to be strictly construed so as to render the insurance effective.  Any doubt as to the coverage or terms of a policy should be resolved in favor of the insured.

*Eyler v. Nationwide Mut. Fire Ins. Co.*, 824 S.W.2d 855, 859–60 (Ky. 1992) (citations omitted).

### C. Ambiguities & The Reasonable Expectations Doctrine

"A contract is ambiguous if a reasonable person would find it susceptible to different or inconsistent interpretations." *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 385 (Ky. App. 2002) (citations omitted). The Kentucky Supreme Court has explained the applicability of the reasonable expectation doctrine when an insurance contract is ambiguous:

> The reasonable expectation doctrine is based on the premise that policy language will be construed as laymen would understand it and applies only to policies with ambiguous terms—e.g., when a policy is susceptible to two (2) or more reasonable interpretations.  Under the reasonable expectations doctrine, when such an

ambiguity exists, the ambiguous terms should be interpreted in favor of the insured's reasonable expectations.

*True v. Raines*, 99 S.W.3d 439, 443 (Ky. 2003), *as amended* (Apr. 2, 2003) (internal quotation marks and citations omitted). Further, with respect to resolving ambiguities in insurance policies, the Kentucky Supreme Court previously underscored and explained the doctrine of reasonable expectations:

> The gist of the doctrine is that the insured is entitled to all the coverage he may reasonably expect to be provided under the policy. Only an unequivocally conspicuous, plain and clear manifestation of the company's intent to exclude coverage will defeat that expectation.

*Simon v. Continental Ins. Co.*, 724 S.W.2d 210, 212 (Ky. 1986) (citation omitted).

## D. Exclusion of Expert Witnesses

The trial court's exclusion of expert testimony due to untimely CR[1] 26 disclosure ultimately involves the trial court's authority to impose sanctions for violations of discovery orders, and trial courts have broad discretion in resolving violations of discovery orders. *Zewoldi v. Transit Authority of River City*, 553 S.W.3d 841, 845–46 (Ky. App. 2018) (citation omitted). Appellate Courts review a trial court's grant or denial of discovery sanctions for abuse of discretion. *Id.* at 846 (citations omitted). "A trial court has abused its discretion when its ruling reflects arbitrariness, unreasonableness, unfairness, or a lack of support from sound

---

[1] Kentucky Rules of Civil Procedure.

legal principles." *Id.* Further, "the person requesting exclusion of testimony must show prejudice. Otherwise, there is no valid basis to exclude or limit testimony." *Equitania Ins. Co. v. Slone & Garrett, P.S.C.*, 191 S.W.3d 552, 556 (Ky. 2006). The purpose of CR 26 is to prevent prejudicial surprise. *Zewoldi*, 553 S.W.3d. at 847.

## ANALYSIS

### A. De Novo Review of the Insurance Policy

Our first task is to review the insurance policy at issue. As a threshold matter, we must decide whether the policy's terms create ambiguity regarding coverage for the loss suffered by Del Frisco's.

### 1. The Certified Policy

Here, the Court looks to the Certified Policy in the record, which consists of 260 pages.[2] We briefly summarize the relevant provisions.

#### *Declaration Pages*

First, the policy contained a document entitled, "PREFERRED BUSINESS POLICY COMMON DECLARATIONS," which includes a

---

[2] TR 373. The Circuit Court record contained a jump drive at TR 373 that contained all two hundred sixty (260) pages of the Certified Policy. This Court's citations to the policy will utilize the cumulative document in TR 373, rather than the various cites to the trial record used by the parties. For accuracy, the Court has cross referenced the cited provisions in TR 373 against the trial record citations of the relevant provisions referenced by the parties.

Commercial Property Coverage Part.[3]  Next, the "COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS" list the building address as 4106–4109 Oechsli Avenue, and—relevant here—contain coverage for Business Personal Property as well as Business Income: Actual Loss Sustained.[4]  In the declarations for the commercial property coverage, page two was entitled, "FORMS AND ENDORSEMENTS APPLICABLE TO THE COMMERCIAL PROPERTY COVERAGE PART."[5]  This same page also lists the "Building and Personal Property Coverage Form," the "Business Income (And Extra Expense) Coverage Form," and the PPE.[6]  The last two pages of the commercial property coverage declarations contain the PPE's "Schedule of Coverages" which shows the "Premises – Boundary" has a "Limit of Insurance" that includes up to 1,000 feet."[7] For this expansion of the "Premises-Boundary" to 1,000 feet, Del Frisco's paid the PPE's annual premium of $353.00.[8]

---

[3] TR 373, p. 16, Certified Policy.

[4] TR 373, p. 18, Certified Policy.

[5] TR 373, p. 19, Certified Policy.

[6] TR 373, p. 19, Certified Policy.

[7] TR 373, pp. 20–21, Certified Policy.

[8] TR 373. p. 21.

*Property Plus Endorsement (PPE)*

The 12-page PPE[9] begins by noting that the endorsement modifies the insurance provided under the "BUILDING AND PERSONAL PROPERTY COVERAGE FORM" and the "BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM," among others.[10] Additionally, the PPE's first two pages contain a Table of Contents that lists coverage enhancements and the limits of insurance. In the sections involving both the "BUILDING AND PERSONAL PROPERTY COVERAGE FORM" and the "BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM OR BUSINESS INCOME (WITHOUT EXTRA EXPENSE) COVERAGE FORM" the Table of Contents includes an amended definition and description of the "Premises" – increasing it to "within 1,000 feet."[11]

Immediately following the PPE's Table of Contents, the document provides a "Coverage Description."[12] Section (A) of this description notes that the "BUILDING AND PERSONAL PROPERTY COVERAGE FORM" was amended such that the provisions "relating to within 100 feet of the described premises

[9] TR 373, pp. 39–50.

[10] TR 373, p. 39.

[11] TR 373, pp. 39–40.

[12] TR 373, p. 40.

-12-

contained in sections A.1.a.(5)(b), A.1.b, A.1.c.(2), and the first paragraph of A.5"

are revised to read "within 1,000 feet of the described premises."[13]

Further, the PPE's Coverage Description in Section A.5 makes further

changes to the Building and Personal Property Coverage Form.  Relevant here is

section (j) under Heading (5), which reads:

> **j.  Business Income and Extra Expense.**  We will pay for the actual loss of Business Income, including "rental value" you sustain and Extra Expense you incur due to the necessary "suspension" of your "operations" during the "period of restoration".  The "suspension" must be caused by direct physical loss of or damage to property at the premises described in the Declarations.  The loss or damage must be caused by or result from a Covered cause of Loss.  With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 1,000 feet of the site at which the described premises are located.  If you occupy only part of the site at which the described premises are located, your premises means:
>
> (i)  The portion of the building which you rent, lease, or occupy[.]

Notably, while section (j)[14] of the PPE is labeled, "Business Income and Extra

Expense," it falls under the main headline of Coverage Description Section (A).

And Coverage Description Section (A) affirmatively amends the "Building and

Personal Property Coverage Form."  Nowhere above section (j) was there a

---

[13] TR 373, p. 40.

[14] TR 373, p. 42, Property plus Endorsement, Form SP1006 (10/16), p. 4 of 12.

specification that the PPE made amendments to the Business Income (And Extra Expense) Coverage Form. In effect, the PPE's section (j) provision appears to only be making amendments to the Building and Personal Property Coverage Form.

This reading of section (j) is bolstered by the final page of the PPE.[15] There, Section (C) says, in relevant part:

> C. If the BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM or the BUSINESS INCOME (WITHOUT EXTRA EXPENSE) COVERAGE FORM is attached to this policy, the following provisions apply:
>
> 1. The provision related to "within 100 feet of the site at which the described premises are located" in Sections A.1. and A.5.b.(3) are revised to read "within 1,000 feet" of the site at which the described premises are located.[16]

### The Amended Provisions in the Building and Personal Property Coverage Form

The next relevant policy provision comes in the actual BUILDING AND PERSONAL PROPERTY COVERAGE FORM.[17] As noted above, the PPE amended specific parts of this Form. Section (A)(2) of the PPE's Coverage Description revised the provisions relating to "within 100 feet of the described

---

[15] TR 373, p. 50, Property Plus Endorsement, Form SP1006 (10/16), p. 12 of 12.

[16] TR 373, p. 50, Property Plus Endorsement, Form SP1006 (10/16), p. 12 of 12.

[17] TR 373, pp. 82-95, BUILDING AND PERSONAL PROPERTY COVERAGE FORM, Form CP0010 (10/12), pp. 1-14.

premises" contained in sections A.1.a.(5)(b), A.1.b, A.1.c.(2), and the first paragraph of A.5 to read "within 1,000 feet of the described premises."

Turning to the actual terms of the Building and Personal Property Coverage Form, we examine the aforementioned sections where the definition of premises was amended. Section A of the Building and Personal Property Coverage Form provides:

**A. Coverage**

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.[18]

1. Covered Property
Covered Property, as used in this Coverage Part, means the type of property described in this section, A.1., and limited in A.2. Property Not Covered, if a Limit Of Insurance is shown in the Declarations for that type of property.[19]

Section A.1.a. defines building as "the building or structure described in the Declarations, including: . . ." several things defined as part of the building.[20] Relevant here, section A.1.a.(5)(b) was amended to read:

**(5)** If not covered by other insurance:

---

[18] TR 373, p. 82.

[19] TR 373, p. 82.

[20] TR 373, p. 82.

**(b)** Materials, equipment, supplies . . . , on or within 1,000 feet of the described premises, used for making additions, alterations or repairs to the building or structure.[21]

Section A.1.b, as amended by the PPE, states:

**b. Your Business Personal Property** consists of the following property located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 1,000 feet of the building or structure or within 1,000 feet of the premises described in the Declarations, whichever distance is greater[.][22]

Section A.1.c.(2), as amended by the PPE, states:

**c. Personal Property of Others** that is:

. . .

**(2)** Located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 1,000 feet of the building or structure or within 1,000 feet of the premises described in the Declarations, whichever distance is greater[.]

Finally, we note that the first paragraph of A.5, as amended by the PPE, is:

**5. Coverage Extensions**

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 1,000 feet of the described premises[.]

---

[21] TR 373, p. 82.

[22] TR 373, p. 82, Building and Personal Property Coverage Form.

*The Amended Provisions in the Business Income (and Extra Expense) Form*

The PPE amended Sections A.1. and A.5.b.(3) of the Business Income (and Extra Expense) Coverage Form to read "within 1,000 feet."  Section A.1 was amended to read:

**A. Coverage**

1. **Business Income** . . .

   We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration".  The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit of Insurance is shown in the Declarations.  The loss or damage must be caused by or result from a Covered Cause of Loss.  With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 1,000 feet of such premises.

   With respect to the requirements set forth in the preceding paragraph, if you occupy only part of a building, your premises means:

   (a) The portion of the building which you rent, lease or occupy;

   (b) The area within 1,000 feet of the building or within 1,000 feet of the premises described in the Declarations, whichever distance is greater (with respect to loss of or damage to personal property in the open or personal property in a vehicle) [.]

Paragraph A.5.b.(3), as amended by the PPE, states as follows:

**5. Additional Coverages**

. . .

**b. Alterations And New Buildings**

We will pay for the actual loss of Business Income you sustain and necessary Extra Expense you incur due to direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss to:

. . .

**(3)** Machinery, equipment, supplies or building materials located on or within 1,000 feet of the described premises and:
**(a)** Used in the construction, alterations or additions; or

**(b)** Incidental to the occupancy of new buildings.

## 2. The Contract is Ambiguous

### *Ambiguity in the Declaration Pages*

This insurance policy is ambiguous because the Declarations pages, the PPE, the Building and Personal Property Coverage Form, and the Business Income (and Extra Expense) Coverage Form contain conflicting definitions of premises that lead to two different, reasonable interpretations. First, the Declarations pages define the building address as 4106–4109 Oechsli Avenue, Louisville, KY 40207.[23] But, the Commercial Property Coverage Part

---

[23] TR 373, pp. 16, 18.

Declarations also contain the PPE Schedule of Coverages which lists the "Premises-Boundary" as 1,000 feet.[24]  Consequently, the Declarations pages contain a patent ambiguity.

### *Ambiguity in the Property Plus Endorsement*

Further, the PPE itself is ambiguous. As discussed above, the PPE contained coverage enhancements that specify changes to the Building and Personal Property Coverage Form.  In the Table of Contents, there is an amended description of premises that specifies it is increased to "within 1,000 feet[.]" Likewise, the PPE contained a coverage enhancement for the Business Income (and Extra Expense) Coverage Form that specified the "Definition of Premises Amended to 'Within 1,000 Feet[.]'"  These provisions in the PPE Table of Contents reflect a patent ambiguity with respect to the premises boundary.

Moving beyond the Table of Contents, the PPE Coverage Description is also ambiguous.  Section (A) of the Coverage Description specifies that the Building and Personal Property Coverage Form is amended.[25]  The crux of State Auto's defense is that Section A.5 of the PPE contains a provision that limits coverage for Business Income and Extra Expense.  However, section (j) inside part

---

[24] TR 373, p. 21.

[25] TR 373, p. 40.

A.5 of the PPE,[26] is found in that part of the endorsement specifically reserved for amendments to the Building and Personal Property Coverage Form and cannot be clearly understood as modifying the Business Income (and Extra Expense) Coverage Form. This construction of section (j) is bolstered by the PPE's final page, where at part 6.C. it specifies that if the Business Income (and Extra Expense) Coverage Form is attached to the policy, other provisions amending the definition of premises to 1,000 feet apply.[27]

Accordingly, we are unable to find that section (j) of the PPE applies to the Business Income and Extra Expense Coverage. Further, we are unable to apply section (j) to the Business Personal Property Coverage because the PPE's Table of Contents shows an amended premises increased to within 1,000 feet. To the extent that section (j) is ambiguous or conflicts with the Table of Contents and Declaration pages in the larger policy, Kentucky law is clear that the ambiguity must be construed in favor of the insured. *See Dowell*, 208 S.W.3d at 877-78; *see also*, *True*, 99 S.W.3d at 443. Thus, we hold that section (j) does not preclude coverage for either type of loss suffered by Del Frisco's in this matter.

---

[26] TR 373, p. 42.

[27] TR 373, p. 50.

*Ambiguities in the Business Personal Property Coverage Form*

Given our analysis above, we find that the four amended premises provisions in the Business Personal Property Coverage Form extend coverage for Del Frisco's to the premises address, plus 1,000 feet. The PPE Table of Contents and the four amended provisions do not suggest that coverage is predicated on direct physical loss solely within the described premises address. Instead, as read by a reasonable person, those provisions suggest coverage for business personal property on the premises, plus 1,000 feet. Further, the PPE's section (j) reflects a patent ambiguity with the terms of the Business Personal Property Coverage Form, because it is illogical and incongruous to include a provision about business income in the PPE section discussing changes to the business personal property form.

We resolve this ambiguity through application of the reasonable expectations doctrine and hold that the policy provides coverage for business personal property on the premises address, plus 1,000 feet, because a reasonable person reading the contract would expect business personal property coverage to extend 1,000 feet beyond the premises based on the policy declaration and the PPE's Table of Contents.

### *Ambiguities in the Business Income (and Extra Expense) Coverage Form*

Similarly, we find that the two amended premises provisions in the Business Income (and Extra Expense) Coverage Form establish coverage for Del Frisco's to the premises address, plus 1,000 feet. First, Section A.1 functions as an exclusion of coverage that seeks to limit the expanded premises definition (of up to 1,000 feet) when the insured only occupies a portion of a larger building. However, a reasonable person encountering this provision would likely be perplexed as to why the Business Income form, and not the Business Personal Property Form, attempts to restrict the expanded premises only to business *personal property* in the open or in a vehicle. Furthermore, a person would have to comb through much of this dense policy to find this confusing provision. To wit, the entire policy is 260 pages, and this paragraph appears on page 127 of the certified policy. An exclusion that is structured into a policy incongruously or that is not clearly defined will not be upheld. *See Simon*, 724 S.W.2d at 212. The ambiguity created here is even more apparent when this limiting provision is read in conjunction with the plain terms of the commercial property coverage part Declarations, as well as the PPE's Table of Contents – both of which lack any such limitation. Consequently, the reasonable expectations doctrine applies because of ambiguities, and we hold that the premises definition applicable to the business

income coverage was the listed address of 4106–4109 Oechsli Avenue, plus 1,000 feet.

Although the Summary Judgment Order relied on the nature and impact of the building's ceiling sag to find coverage for Del Frisco's, on *de novo* review, we apply the reasonable expectations doctrine in a different manner – ultimately reaching the same result. The State Auto insurance contract— specifically the combined effect of the Business Income and Extra Expense Form and the Business Personal Property Coverage Form—is ambiguous when read in conjunction with the policy Declarations and the PPE. Furthermore, the asserted exclusion of premises coverage for business income in Section A.5(j) of the PPE Coverage Description amending the Building and Personal Property Coverage form was not clearly defined and its irregular structural placement in the policy makes it unenforceable.

## B. Bifurcation

Given our analysis and holding above, the Circuit Court will resume this matter with a trial to adjudicate any losses Del Frisco's can establish under the provisions of its insurance policy with State Auto. At the same time, Del Frisco's remaining bad faith claims will also need to be resolved. In litigation involving insurance companies, there is sometimes a need to bifurcate trials. *See Wittmer v.*

-23-

*Jones*, 864 S.W.2d 885, 891 (Ky. 1993) (discussing the need for bifurcating underlying negligence actions from claims of bad faith against insurance carriers).

However, in *Wittmer* the question of carrier liability for bad faith failure to pay claims was unresolved by the time of trial due to theories of comparative negligence, so bifurcation was appropriate to avoid prejudice to the carrier. Here, as a result of our reasoning finding coverage applies to Del Frisco's, the question of contractual liability for the restaurant under the Preferred Business Policy is resolved – distinguishing these facts from those in *Wittmer*. The only remaining issues for trial are the extent of damages for both of Del Frisco's claims: the underlying claim for declaration of rights and coverage under the policy, as well as its claim for bad faith settlement practice.

The Circuit Court's Order of June 27, 2024, acknowledged confusion on the question of bifurcation, but ultimately declined to order the proceedings be separated. Generally, whether to bifurcate issues for purposes of trial is within the sound discretion of the trial court. CR 42.02 ("If the court determines that separate trials will be in furtherance of convenience or will avoid prejudice, or will be conducive to expedition and economy, it shall order a separate trial of any . . . separate issue . . . or issues."). While acknowledging case law on bifurcation is not definitive given the exact scenario presented here, the trial court should fully weigh this issue before proceeding. At this juncture, given that State Auto did not

raise the bifurcation issue in its initial appellate brief, we will not reach the merits. *See Seeger Enters., Inc. v. Town & Country Bank & Tr. Co.*, 518 S.W.3d 791, 796 (Ky. App. 2017) (appellant not permitted to raise an issue for the first time in a reply brief).

### C. Cross-Appeal: Abuse of Discretion to Preclude Del Frisco's Identification of Additional Expert Witnesses

On cross-appeal, Del Frisco's argues it should be permitted to identify additional expert witnesses for trial. Specifically, it references the Order reaffirming Summary Judgment in favor of Del Frisco's as to insurance coverage, where the Circuit Court also addressed Del Frisco's ability to call expert witnesses at trial. Del Frisco's notes that the Circuit Court vacated an earlier June 12, 2024, Order that precluded Del Frisco's from presenting expert testimony at trial due to late disclosure. Del Frisco's also emphasized that the Court's June 27, 2024, Order acknowledged that after reviewing the file it found the delay in expert disclosure was not caused by any neglect or purposeful delay on Del Frisco's behalf. In the Order of June 27, 2024, the Court vacated its prior Order precluding Del Frisco's from presenting expert testimony at trial and allowed its expert disclosure. However, in that same Order, the Court also mandated that Del Frisco's would be prohibited from identifying any additional expert witnesses.

Del Frisco's argues the Order from June 27, 2024, prohibiting it from identifying any additional expert witnesses, is an abuse of discretion. In support, Del Frisco's points out State Auto filed an appeal, and that the trial has been postponed indefinitely. Consequently, Del Frisco's argues that there can be no prejudice to State Auto given that a trial is not even scheduled. Further, Del Frisco's highlights that the health of its primary expert, Keith Wilts, remains precarious and there is a very real possibility he would not be able to testify at trial, prejudicing Del Frisco's.

Given the Circuit Court's finding that Del Frisco's was not at fault for their expert disclosure delay, the lack of a scheduled trial date (removing any prejudice to State Auto), and the precarious state of Keith Wilts' future availability, it would be an abuse of discretion for the trial court to limit Del Frisco's ability to call any additional expert witnesses. On remand, Del Frisco's should therefore be permitted to notice, disclose, and call additional expert witnesses for trial on the remaining contractual issues, and both sides should be allowed to conduct discovery of the bad faith claims and select appropriate experts based on that bad faith discovery.

## CONCLUSION

We affirm the January 3, 2023, Order of Summary Judgment finding in favor of Del Frisco's on the issue of coverage, albeit for reasons different from

those of the trial court.  Prior to conducting a trial on the issue of damages – which remains the province of the jury – the Circuit Court will decide whether bifurcation of the bad faith claims against State Auto is required.  Finally, we find in favor of Del Frisco's on its cross-appeal request to introduce additional expert witnesses at trial on the contractual claims.  Both sides should be permitted to conduct discovery and select appropriate experts on the issue of bad faith.

ALL CONCUR.

BRIEF FOR APPELLANT/CROSS-APPELLEE:

Carmen C. Sarge
Neil P. Baine
Perry A. Adanick
Louisville, Kentucky

BRIEF FOR APPELLEE/CROSS-APPELLANT:

Britt Stevenson
Sarah Chervenak
Louisville, Kentucky